# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| BRANDON LEE POLSGROVE, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 21-06063-SJ-NKL-SSA |

## ORDER

Plaintiff Brandon Lee Polsgrove seeks review of the denial by the Acting Commissioner of his application for Social Security Disability Insurance and Supplemental Security Income under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the reasons set forth below, the Court affirms the administrative decision.

### I. FACTUAL BACKGROUND

Polsgrove, born on July 6, 1974, was 42 years old on the alleged disability-onset date. Tr. 31. He has a high school education. *Id.* His past relevant employment was as a mail carrier, industrial cleaner, and firefighter. Tr. 30.

Although Polsgrove alleged disability beginning June 2017, the earliest medical evidence identified in the record is from November 2018. Doc. 633; *see also* Doc. 15, p. 2. At that time, Polsgrove had an initial psychiatric visit with Merlin Brown, M.D. Doc. 633. Overall, Polsgrove's appearance was anxious. *Id.* He reported fearful thoughts, a depressed mood, difficulty concentrating, difficulty falling and staying asleep, diminished interest or pleasure, excessive worry, fatigue, racing thoughts and restlessness. *Id.* He reported that functioning was extremely difficult, and that he had tried multiple medications, but they had not been effective. Tr. 633.

On January 13, 2019, Polsgrove was admitted to a hospital on an emergency basis for acute renal failure, sepsis, acute liver failure, acute pancreatitis, alcoholism, and shock. Tr. 346, 361. Polsgrove, who was at risk of dying (*see* Tr. 346), remained in the hospital from 1/13/2019 to 1/29/2019. Tr. 337-538.

Nonetheless, the very next month, Polsgrove denied participating in, and expressly denied interest in participating in, group treatment or treatment facilities for alcoholism. Tr. 548-49. Still, he abstained from alcohol for a period of time. Tr. 554.

In June 2019, at least, Polsgrove relapsed in his alcoholism. Tr. 573. He reported that his anxiety and depression were high and that he was having difficulty accepting the possibility that he would have to take disability. *Id*.

In November 2019, Polsgrove saw therapist Joseph Kline, LCSW, for evaluation and management of his mental health, following a referral from his primary care provider ("PCP"), Ashley Lance, APRN. Tr. 640. Polsgrove reported depression and anxiety, and correspondingly appeared anxious and depressed, sitting in a tense posture. Tr. 644. His activity was accelerated and his speech was rapid, pressured and "overproductive." *Id.* He appeared to have thought processes that were circumstantial, but also flights of ideas. *Id.* He reported visual and auditory hallucinations in the past months, but not at present. *Id.* He appeared to have impairment of attention/concentration and memory. Diagnoses were noted as post-traumatic stress disorder, major depressive disorder that was both recurrent and severe, and severe alcohol-use disorder. Tr. 648.

Polsgrove, referred by his PCP, also saw Sreenadha Davuluri, M.D., for neurological evaluations for memory loss and tremors on December 11, 2019. Tr. 754. Dr. Davuluri noted that Polsgrove was experiencing memory impairment, essential tremors, and polyneuropathy, most

likely related to his prior alcohol use. Tr. 758. Dr. Davaluri saw Polsgrove again in January and May 2020 for follow-up regarding the memory loss. Tr. 750. Polsgrove had had some drinks in the interim. *Id.* An MRI of Polsgrove's brain was unremarkable. *Id.* The doctor prescribed medication for the memory loss. *Id.* In the May visit, the doctor noted that Polsgrove was "stable" and that he would see Polsgrove only on an as-needed basis.

On January 13, 2020, following a recommendation from therapist Kline, Donald Hinton, M.D., a psychiatrist, conducted an initial psychiatric evaluation of Polsgrove. Tr. 656. Dr. Hinton noted that Seroquel had "been helpful for his mood and insomnia" and changed some of Polsgrove's medication and dosages. Tr. 657, 660. Dr. Hinton saw Polsgrove again on January 28, 2020. Polsgrove reported that he was not drinking and he felt better on medication. Tr. 661. Dr. Hinton's notes from his continued visits with Polsgrove on March 23, 2020, May 8, 2020, June 11, 2020, and July 8, 2020 indicate that, despite frequent reports of anxiety, Polsgrove's mental health issues generally had improved. Tr. 668, 675, 682, and 689.

In a medical source statement dated December 9, 2020, which was submitted to the Appeals Council, Dr. Hinton wrote that Polsgrove had been unable to work since 2019, although Dr. Hinton had been seeing Polsgrove since only January 2020. Tr. 10. Dr. Hinton reported Polsgrove's diagnosis as "severe PTSD and major depression" with a history of alcohol use currently in remission. *Id.* Most of the information in the statement was provided in the form of checked boxes. Tr. 7-11.

At the Commissioner's request, Polsgrove underwent a physical consultative examination with Andre Mitchell, M.D., on June 29, 2019. Dr. Mitchell noted a history of acute hepatorenal failure with significant abdominal pain on Tizanidine. Tr. 580. Neurological exam demonstrated

weakness of the right and left proximal and distal arms, and weakness in the right and left proximal and distal legs. Tr. 583-84. Polsgrove lacked full range of motion in his extremities. Tr. 584.

Also at the request of the Commissioner, Polsgrove underwent a consultative psychological evaluation on June 29, 2019 with Christie Nelson, Psy.D. On clinical examination, Dr. Nelson indicated that Polsgrove's "presentation was bizarre." Tr. 594. He made guttural noises that were startling in volume and intensity, and his eye contact vacillated between intense and sparse. Dr. Nelson expressly considered whether Polsgrove was "[m]alingering," noting that his "atypical presentation would outwardly suggest the exaggeration of impairment for the purposes of secondary gain (i.e., disability benefits)," but she noted that Polsgrove's "symptoms of confusion, memory impairment, and mood instability are also legitimate byproducts of hepatorenal failure." Tr. 595. Dr. Nelson also noted that Plaintiff was "a poor historian throughout the clinical contact" and that the information in her report "should be interpreted with caution." Tr. 592.[1]

## II. PROCEDURAL BACKGROUND

Polsgrove filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 15, 2019, alleging disability beginning June 1, 2017.

After Polsgrove's claims for SSDI and SSI were denied at the State Agency level, Polsgrove requested an administrative hearing. Following the hearing (Tr. 72-85), the Administrative Law Judge (ALJ) denied Polsgrove's claim on October 26, 2020. Tr. 17-36. The ALJ determined at step four of the Commissioner's sequential evaluation process that Polsgrove was incapable of his past work as a firefighter, mail carrier, or industrial cleaner, but at step five,

---

[1] Polsgrove also suffered from back pain that he attributed to a fall he took when working as a firefighter. That pain is not, however, at issue on this appeal.

concluded that Polsgrove could perform work as a router, retail price marker, and collator operator, and that Polsgrove therefore was not entitled to disability benefits. Tr. 30-31.

Polsgrove requested a review of the hearing decision by the Appeals Council and submitted additional opinion evidence from his treating psychiatrist, Dr. Hinton. Tr. 7-11. By letter dated April 8, 2021, the Appeals Council declined to review the decision. Tr. 1-6.

Polsgrove has exhausted his administrative remedies.

### III. <u>STANDARD</u>

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (quotation marks and citation omitted). However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted).

The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## IV.     DISCUSSION

### A. Whether the Commissioner Failed to Adequately Evaluate Medical Opinion Evidence in Formulating the RFC with Regard to Mental Impairments

Polsgrove argues that the ALJ erred in finding that Polsgrove was capable of a limited range of simple, routine, and repetitive work. In reaching this conclusion, the ALJ found the opinion of consulting psychological Dr. Nelson "unpersuasive" and instead found the opinion of the non-examining and non-treating consultant Dr. Skolnick persuasive. The ALJ explained his decision to discount Dr. Nelson's opinion by pointing to indications that Polsgrove lives independently, prepares meals, drives, goes out alone, shops, does household chores, and manages his money; that he has had limited mental health treatment; and that when he takes his medication and is sober, his depression and anxiety improve.

#### i. Whether the ALJ Selectively Cited Polsgrove's Medical Records

Polsgrove argues first that the portions of the record to which the ALJ cites were misconstrued or taken out of context. However, the pages the ALJ cites include the following notes:

- January 28, 2020: "The patient reports that he is feeling better on the medicine. He says, 'I'm not as anxious and not as angry.' . . . His mood is 'calmer' and brighter. He denies feeling sad, hopeless or depressed. He denies having any current thoughts of harming himself or anyone else. No side effects. No signs of mania or psychosis. He is compliant with his meds. He is not drinking." Tr. 661.

- March 23, 2020: "He denies feeling sad, hopeless or depressed. He denies having any current thoughts of harming himself or anyone else. No signs of mania or psychosis. He denies drinking any [a]lcohol." Tr. 668.

- May 8, 2020: "He feels better. His mood is good. We reviewed all of his meds. No side effects. He denies feeling sad, hopeless or depressed. He denies having any current thoughts of harming himself or anyone else. No signs of mania or psychosis. Sleeping okay." Tr. 675.

The only complaints Polsgrove noted in these visits had to do with being unable to sleep (Tr. 661, 668) and, in the March visit, anxiety (668). Indeed, except for intermittent reports of anxiety, Polsgrove's positive response to his medication continued. *See* Tr. 682 (June 11, 2020: "The patient reports that he is doing all right and 'hanging in there.' He feels his meds are helping. No side effects. He feels that his meds help his [*sic*] 'to not get as upset as I used to.' His mood is good. He still struggles with a little Anxiety. He denies drinking any Alcohol. He denies feeling sad, hopeless or depressed. He denies having any current thoughts of harming himself or anyone else. No signs of mania or psychosis."); Tr. 689 (July 8, 2020: "He feels anxious frequently. His mood is okay overall. He denies feeling sad, hopeless or depressed. He denies having any current thoughts of harming himself or anyone else. No signs of mania or psychosis. We reviewed all of his current meds. No side effects. We discussed a trial of Hydroxyzine pm to address his Anxiety symptoms and he agrees.").

One of the records that Plaintiff cites in complaining about the ALJ's selective citation was from Polsgrove's "initial psychiatric assessment" in January 2020 and *predated* the aforementioned records. Tr. 656. Plaintiff also cites the June and July 2020 notes that indicate anxiety but also overall "good" or "okay" mood. Tr. 682. As discussed above, the few reports of anxiety are outweighed by the subsequent or contemporaneous records that plainly show improvement with medication. *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) ("Impairments that are controllable or amenable to treatment do not support a finding of total

disability." (quotation marks and citation omitted)). Finally, while Polsgrove indicated that he had had passive thoughts of death, as reflected above, he expressly denied thoughts of self-harm on each of those visits. Thus, the ALJ's citations to the record are supported by substantial evidence in the record.

### ii. Whether the ALJ Erred in Discounting the Opinion of Dr. Nelson

Polsgrove also argues that, if the Commissioner had properly weighed the findings of Plaintiff's examining medical source Dr. Nelson, he would have determined that Plaintiff did not have the residual functional capacity to perform work.

Dr. Nelson found that Polsgrove "has limited ability for sustained concentration an persistence in simple and repetitive tasks"; "appears incapable of retaining information and effectively carrying out instructions that are multi-step and moderate without the use of memory aids"; "has impaired social skills and limited ability to interact with others routinely and adapt to his environment"; "experiences significant mood instability which negatively impacts social skills and daily living"; "appears to lack a sound ability to reason and make work-related decisions"; and "appears to have struggles with concentration, persistence, or pace"; and that his functioning was likely to decline with increased stress. Tr. 596. She considered whether Polsgrove was "[m]alingering," noting that his "atypical presentation would outwardly suggest the exaggeration of impairment for the purposes of secondary gain (i.e., disability benefits)," but concluded that Polsgrove's "symptoms of confusion, memory impairment, and mood instability are also legitimate byproducts of hepatorenal failure." Tr. 595.

The ALJ found Dr. Nelson's opinion "unpersuasive," concluding that it was inconsistent with the record:

> [T]he claimant's presentation at follow up exams since his January 2019 hospitalization did not indicate any altered mental status or bizarre presentation,

and an examination four days prior to Dr. Nelson's evaluation did not indicate any strange behavior or limited cognition. Similarly, the claimant did not have difficulty interacting at his medical consultative evaluation that occurred the same day and no bizarre behavior was noted. Further, the claimant's function report suggests that he is able to do more than his presentation at Dr. Nelson's evaluation suggests.

Tr. 29.

Polsgrove does not dispute that no medical reports since the January 2019 hospitalization reflect the kind of "bizarre behavior" that Polsgrove purportedly exhibited when Dr. Nelson evaluated him. Dr. Nelson herself also noted that Plaintiff was "a poor historian throughout the clinical contact" and that the information in her report "should be interpreted with caution." Tr. 592.

Polsgrove also does not contest that Dr. Nelson's findings were not consistent with Polsgrove's activities of daily living. For example, Polsgrove reported that he typically cooks, cleans the house, grocery shops for one or two hours every two weeks, watches some television, talks with and visits family, and attempts "to fix anything around [his] home that [he] can." Tr. 283 and 285. He also fishes, does yardwork, and housework "sometimes," although "[n]ot well if it[']s physically demanding." Tr. 286. He also drives and is capable of going out alone. Tr. 285. These activities are not consistent with Dr. Nelson's conclusions that Polsgrove "has limited ability for sustained concentration and persistence in simple and repetitive tasks"; "appears incapable of retaining information and effectively carrying out instructions that are multi-step and moderate without the use of memory aids"; "has impaired social skills and limited ability to interact with others routinely and adapt to his environment"; "experiences significant mood instability which negatively impacts social skills and daily living"; and "appears to have struggles with concentration, persistence, or pace . . . ." Tr. 596. Dr. Nelson's findings concerning Polsgrove's mood are also inconsistent with Dr. Hinton's subsequent medical notes from 2020 that showed

significant improvement with medication. *See* Tr. 661, 668, 675, 682, 689. Thus, the ALJ's decision to discount the opinion of Dr. Nelson was supported by substantial evidence in the record.

### iii. Whether the ALJ Erred in Discounting the Opinion of Treating Medical Source Dr. Hinton

Polsgrove also argues that, if the Commissioner had properly weighed the findings of Plaintiff's treating medical source Dr. Hinton, he would have determined that Plaintiff did not have the residual functional capacity to perform work. After the ALJ's October 2020 decision, Polsgrove submitted a medical source statement from Dr. Hinton, his treating psychiatrist, to the Appeals Council.[2] The entire document is in checkbox form, with the exception of the following statement: "Pt. has been seen since 1-13-20. [U]nable to work since 2019. Diagnosis is severe PTSD & major depression. h/o Alcohol use prior to Jan 2020. No Alcohol use since 1-15-20. (in remission)[.]" Tr. 10. Dr. Hinton's checkmarks indicate that Polsgrove had "extreme" limitations in ability to understand, remember, and carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and ability to

---

[2] The Appeals Council reviewed the additional evidence, but found that Plaintiff had not shown a reasonable probability that it would change the outcome of the decision. Tr. 1-2. When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, the Court's role is not to scrutinize the Appeals' Council's decision, but to determine whether the record as a whole, including the new evidence, supports the ALJ's decision. *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013).

set realistic goals or plans independently of others; and "marked" limitations in ability to remember locations and work-like procedures, ability to sustain an ordinary routine without special supervision, ability to make simple work-related decisions, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to travel in unfamiliar places or use public transportation. Tr. 7-11.

Checkbox forms by themselves carry little evidentiary weight. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding that assessments consisting "of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses" that "cite no medical evidence and provide little to no elaboration . . . possess "little evidentiary value"). Dr. Hinton's "extreme" and "marked" findings are not supported by, and indeed, stand in contrast with, his own treatment records, which note that Polsgrove was "feeling better on . . . medicine" and documented only occasional reports of anxiety and trouble sleeping. Tr. 661; *see also* Tr. 668, 675, 682, 689. *See e.g., Kraus v. Saul*, 988 F.3d 1019, 1025 (8th Cir. 2021) ("Substantial evidence supports the ALJ's decision to give 'little weight' to Dr. Duffy's opinion. . . . Dr. Duffy checked boxes indicating Kraus could not work, but gave no explanation and proffered no evidence for his conclusion. Further, his treatment notes do not support his conclusion, noting continued improvement in her memory, concentration, sleep, mood, and physical health."). Dr. Hinton multiple times concluded that Polsgrove did not even require a full mental status examination. Tr. 668, 675, 682, 689.

\*   \*   \*

For the reasons discussed above, the Court finds that Polsgrove has not identified any portion of the ALJ's RFC with respect to Polsgrove's mental capabilities that was not supported by substantial evidence in the record.

## B. Whether the Commissioner Failed to Consider the Combined Effect of Polsgrove's Impairments, Including His Gastrointestinal Disorder, Polyneuropathy, and Hand Tremors, in Formulating the RFC

Polsgrove argues that the ALJ did not properly consider the combined effect of Polsgrove's physical impairments, particularly his gastrointestinal system disorder, polyneuropathy, and hand tremors, in formulating the RFC.

The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairment--be critical to the outcome of the claim." SSR 96-8p; *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").

### i. Whether the ALJ Erred in Finding that Polsgrove's Gastrointestinal Problems Were Not Severe

Polsgrove suggests that the ALJ erred in not finding the gastrointestinal disorder severe despite the conclusion of reviewing consultant Dr. Debroy that the disorder was Polsgrove's primary severe impairment (Tr. 94) and the ALJ's conclusion that Dr. Debroy's opinion was persuasive (Tr. 29). However, Dr. Debroy's notes discuss the gastrointestinal issues in connection with Polsgrove's January 2019 hospitalization. Tr. 99-10, 119-20. The very next month, Polsgrove reported that he was "doing well" and his physical exam was unremarkable. Tr. 120. Thus, substantial evidence supports the ALJ's decision to find that Polsgrove's gastrointestinal disorder was not severe.

12
Case 5:21-cv-06063-NKL   Document 22   Filed 02/14/22   Page 12 of 14

Moreover, Polsgrove has not suggested how treating the disorder as more severe would have affected Polsgrove's RFC. *See Burgess v. Berryhill*, No. 4:17 CV 2316 ACL, 2018 WL 4457308, at *6 (E.D. Mo. Sept. 17, 2018) ("Even if the ALJ should have noted Burgess' diagnoses . . . as severe, his failure to do so would not be sufficient cause for remand because it is the functional limitations imposed by a severe impairment that are dispositive, not the fact of diagnosis." (citing *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) ("Thus, the dispositive question remains whether [claimant]'s functioning in various areas is markedly impaired, not what one doctor or another labels his disorder."))).

## ii. **Whether Polsgrove's Neuropathy Warrants Remand**

Polsgrove also argues that the Commissioner's decision disregards his neuropathy. Polsgrove had complained that, "sometimes," when he sits in a chair, his "feet turn purple," and "there's times where it feels like a needle is just poking me in the bottom of my foot all over." Tr. 79. Examining physician Dr. Mitchell noted demonstrated weakness of the right and left proximal and distal arms and weakness in the right and left proximal and distal legs. Tr. 583-84. Dr. Mitchell also noted that Polsgrove's range of motion was not full in all extremities. Tr. 584.

The ALJ found Dr Mitchell's opinions consistent with the record. Tr. 29. Nonetheless, he found Polsgrove's hand tremors and polyneuropathy non-severe, noting that "the polyneuropathy and hand tremors are treated with medication and during the claimant's most recent physical examinations, he denied feeling any numbness or tingling in his feet and he did not report[] any significant problems with his hands." *Id.* The ALJ also cited Polsgrove's activities of daily living. *Id.*

Dr. Mitchell's report is dated June 29, 2019. Polsgrove's subsequent medical records indicated that he was not experiencing numbness or tingling. Tr. 703 (July 2020); Tr. 710 (May

2020); Tr. (January 2020).  Further, Polsgrove's reported activities of daily living—which include driving alone, performing housework and yardwork, repairing things, fishing, and hunting—suggest that the polyneuropathy and hand tremors did not limit Polsgrove's manual capabilities. Substantial evidence in the record thus supports the ALJ's decision to not find the polyneuropathy and hand tremors severe, and to not include additional limitations in the RFC to account for them.

## V. <u>CONCLUSION</u>

For the reasons discussed above, the Court AFFIRMS the administrative decision.

<u>s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated:  <u>February 14, 2022</u>
Jefferson City, Missouri